United States Court of Appeals,

Fifth Circuit.

No. 91–6145.

Ted HIRTZ, et al., Plaintiffs–Appellees,

John M. Arrington, Catherine Cash, John Posey, and Edward Holland, Plaintiffs–Appellants,

v.

The STATE OF TEXAS, Defendant–Appellee–Appellant.

Oct. 14, 1992.

Appeals from the United States District Court for the Southern District of Texas.

Before KING, WILLIAMS, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

I.

The plaintiffs own beachfront property on the Texas Gulf coast. Along that shoreline, the state owns the land between the line of mean low tide and the line of mean high tide. The public has an easement between the line of mean high tide and the line of vegetation, acquired under common law principles of dedication, prescription, and/or custom. Because of the peculiar definition of this type of easement, the location of the easement shifts as the vegetation line shifts.

Hurricane Alicia in 1983 and fierce spring storms in 1988 caused radical shifts in the vegetation line along portions of the coast. The state then brought enforcement proceedings under the Texas Open Beaches Act (the "Act") against plaintiffs and others and obtained an injunction preventing plaintiffs from rebuilding or repairing their homes or improving their vacant lots, as such construction would interfere with the public's easement in the beaches. *See* TEX. NAT. RES. CODE ANN. § 61.013 (West Supp.1992).

II.

On July 11, 1988, certain of the plaintiffs, *to-wit,* Ted Hirtz, Pete Anselmo, Paul Force,

Harold Flatt, and their wives filed suit against the Attorney General of Texas in federal district court, seeking a declaration that the Act, TEX. NAT. RES. CODE ANN. §§ 61.001–.026 (West 1978 & Supp.1992), violates the takings clause of the Fifth Amendment. On August 15, 1988, the attorney general moved to dismiss on the ground of abstention. The district court denied that motion on September 14, 1988.

On October 24, 1988, the district court *sua sponte* substituted, as defendant, the State of Texas for the attorney general. Plaintiffs, without objection, filed an amended complaint naming only the state as defendant and adding six new plaintiffs: John Arrington, Catherine Cash, Edward Holland, Dallas Pittman, John Posey, Jr., and Chapoton/Ramsey Ltd. Partners. Prior to filing the amended complaint, plaintiffs Anselmo and Flatt and their wives agreed to dismiss their claims.

On April 13, 1989, the state moved to dismiss the complaint on the basis of Eleventh Amendment immunity, lack of standing, and lack of subject matter jurisdiction. The state also moved to dismiss the claims of the six plaintiffs added in the amended complaint on a number of grounds, including res judicata based upon prior state litigation involving those plaintiffs. On June 26, 1989, the district court dismissed Arrington, Cash, Holland, and Posey as plaintiffs without specifying the grounds. The court allowed Cash and Posey to amend their complaint but later dismissed their amended pleadings as well, again without specifying the grounds.

The state and the plaintiffs moved for summary judgment. On April 30, 1991, 773 F.Supp. 6, the district court granted in part both motions. Under the court's judgment, the migration of the public easement does not constitute a taking; as a result, Hirtz, Force, Pittman, and Chapoton/Ramsey Ltd. Partners took nothing against the state; the state was enjoined from forcing the plaintiffs to remove their existing structures and from preventing them from maintaining those structures.

Arrington, Cash, Posey, and Holland appeal, challenging the order of dismissal; the state appeals, attacking the injunction and asserting that the court should have dismissed the case on the ground of either Eleventh Amendment immunity or abstention. Because we hold that the Eleventh Amendment bars plaintiffs' suit, we do not reach the merits of their Fifth Amendment claim or the abstention or res judicata issue.

## III.

The Eleventh Amendment issue in this case arises from rather extraordinary circumstances. The suit began like most federal actions seeking an injunction against enforcement of an unconstitutional state statute—the plaintiffs sued the attorney general. On October 24, 1988, District Judge Hughes, without reference to the Eleventh Amendment or the line of cases following the landmark decision of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), *sua sponte* ordered the state substituted for the attorney general as defendant. In his order, Judge Hughes substituted the State of Texas in the caption and warned the parties that "[f]ailure to place the name of the proper party in the style of any further pleading will result in that pleading [sic] being disregarded."

Surprisingly, the plaintiffs failed to object to this unusual order. The state did not object either but, instead, added the following footnote to the front page of its subsequent pleadings:

> The State of Texas is listed as the defendant in the style of this case pursuant to the October 24, 1988 order of this Court. However, the Attorney General of Texas maintains that he is the proper party to this case, because he represents the public, individually and collectively, under the Texas Open Beaches Act, TEX.NAT.RES.CODE §§ 61.001–61.025....

Apparently, Judge Hughes became annoyed with this footnote, as, without warning, he signed an order on February 28, 1989, striking eleven of the state's pleadings containing it.

The state complied with the order and finally filed a motion to dismiss on Eleventh Amendment and other grounds on April 13, 1989. Apparently, the state's Eleventh Amendment

argument fell on deaf ears, as the district court rendered judgment on May 2, 1991, without mentioning the Eleventh Amendment.

It is not entirely evident why Judge Hughes *sua sponte* ordered the substitution of the state for the attorney general. The record does provide some evidence of his reasoning, however. During a September 14, 1988, hearing, Judge Hughes *sua sponte* raised the notion of that substitution and mentioned that he had required the same change when he was a state district judge. Of course, the Eleventh Amendment does not apply in state court but, in this federal case, becomes the central issue.

During the September 14 hearing, Judge Hughes also spoke of what he saw as the attorney general's desire to see "his name in print." Later, in a memorandum accompanying his order striking the state's pleadings, Judge Hughes again raised this concern, as follows:

> The attorneys for Texas persist in intruding the attorney general into the party defendant's role. The pleadings filed with the attorney general's impertinent footnote or other self-aggrandizing intrusion will be struck.

These excerpts from the record, we think, demonstrate why Judge Hughes substituted the state as a party: He seems to think the attorney general likes to appear as a party for the purpose of self-promotion.

Even if—which we do not decide—there were some truth to this assertion, we do not see how it could apply in this case. After all, the Attorney General did not bring this action; he was sued. The Constitution provides the more salient reason why the plaintiffs sued the attorney general—the Eleventh Amendment bars suits against the state. That amendment, however, does not bar suits for injunctive relief against state officials. Hence, countless cases have been brought against state attorneys general in the wake of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *E.g., Morales v. Trans World Airlines,* ―― U.S. ――, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

*Ex Parte Young* has been labeled one of the Supreme Court's three most important decisions because it "established the power of the federal courts to enforce the Constitution against state legislative and executive action." 17 CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 4231 (2d ed. 1988). Because of the decision's importance, we turn to the Supreme Court for a brief explanation of Eleventh Amendment jurisprudence:

> When the suit is brought only against state officials, a question arises as to whether that suit is a suit against the State itself. Although prior decisions of this Court have not been entirely consistent on this issue, certain principles are well established. The Eleventh Amendment bars a suit against state officials when "the state is the real, substantial party in interest...." Thus, "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter...." And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief....
>
> The Court has recognized an important exception to this general rule: a suit challenging the constitutionality of a state official's action is not one against the State. This was the holding in *Ex parte Young* ..., in which a federal court enjoined the Attorney General of the State of Minnesota from bringing suit to enforce a state statute that allegedly violated the Fourteenth Amendment. This Court held that the Eleventh Amendment did not prohibit issuance of this injunction. The theory of the case was that an unconstitutional enactment is "void" and therefore does not "impart to [the officer] any immunity from responsibility to the supreme authority of the United States".... Since the State could not authorize the action, the officer was "stripped of his official or representative character and [was] subjected in his person to the consequences of his individual conduct...."
>
> ....
>
> ... This rationale, of course, created the "well-recognized irony" that an official's unconstitutional conduct constitutes state action under the Fourteenth Amendment but not the Eleventh Amendment.... Nonetheless, the *Young* doctrine has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to "the supreme authority of the United States."

*Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 101–05, 104 S.Ct. 900, 908–10, 79 L.Ed.2d 67 (1984) (citations omitted).

## IV.

Accordingly, parties must sue the attorney general in order to challenge the constitutionality of a state statute in federal court. The Eleventh Amendment bars suits against a state by a citizen of that state or a different state. As the plaintiffs did not make proper objection when Judge Hughes

substituted the state as a party, however, they have waived their objection.[1]

Given plaintiffs' waiver, the defendant is the state. Although the case involves a federal question, the Eleventh Amendment bars the suit, absent congressional abrogation or consent or waiver by the state. *Pennhurst,* 465 U.S. at 98–99, 104 S.Ct. at 907.[2] None of these exceptions applies in this case. No one has suggested congressional abrogation. The State plainly has not consented, as it has moved to dismiss the suit. Moreover, Texas has not waived its Eleventh Amendment immunity merely by allowing declaratory judgment actions to be brought against the state pursuant to TEX. NAT. RES. CODE ANN. § 61.019 (West 1978).[3]

Thus, the Eleventh Amendment bars plaintiffs' suit. Accordingly, we VACATE the judgment of the district court and enter a judgment of DISMISSAL.

---

[1]We recognize that the attorneys for both sides in this case were in a difficult position with a district judge who seemed to have his mind made up on a matter the parties had not even raised. Nonetheless, it is counsel's responsibility to make proper objection, even at the risk of incurring the court's wrath.

[2]The Supreme Court has struggled in recent years to develop a coherent theory of Eleventh Amendment interpretation. *Compare Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 23–28, 109 S.Ct. 2273, 2286–2289, 105 L.Ed.2d 1 (1989) (Stevens, J., concurring) *with id.* at 29–45, 109 S.Ct. at 2286–2289 (Scalia, J., dissenting). Although one interpretation would apply the Eleventh Amendment only to diversity suits, the Court has yet to overrule *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), which applies the amendment to all federal lawsuits where a state is a party.

[3]*See Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985) ("Thus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court.*"); *see also id.* at 239–40, 105 S.Ct. at 3146 ("Thus, we have held that a State will be deemed to have waived its immunity only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." (Citations and single quotation marks omitted.)).